IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEITH E. SONDERLING,
ACTING SECRETARY OF LABOR,
U.S. DEPARTMENT OF LABOR,

Petitioner,

v. Case No. 26-MC-103-JWB

JARED A. SMITH d/b/a
GAMBINO'S PIZZA,

Respondent.

**MEMORANDUM AND ORDER**

This matter is before the court on Magistrate Judge Gwynne E. Birzer's Report and Recommendation ("R&R") which recommends the undersigned grant the Department of Labor's petition to enforce an administrative subpoena. (Doc. 6.) Respondent has filed no objection to the R&R and the time for doing so has now passed. For the reasons stated herein, the court ADOPTS the R&R and GRANTS the petition to enforce the administrative subpoena.

**I. Facts**

On May 7, 2025, the Wage and Hour Division ("W&H") of the U.S. Department of Labor ("DOL") opened an investigation of Jared A. Smith, who does business as Gambino's Pizza in Marion, Kansas ("Respondent"). (Doc. 1-1 at 1.) The purpose of the investigation was to determine whether the restaurant was complying with the Fair Labor Standards Act ("FLSA") of 1938, 29 U.S.C. § 201 *et seq*. On May 22, W&H Investigator Guadalupe Montes traveled to the restaurant and held an opening conference with Respondent. During that meeting, Montes gave Respondent an appointment letter that explained the investigation, cited W&H's authority under

the FLSA, listed the records needed, and set a May 28 deadline to produce them. (*Id*. at 2, 5–7.) According to Montes, Respondent said he would provide the documents by week's end.

When no documents arrived, Montes called the restaurant on June 11, 12, and July 2, reached an answering machine each time, and left messages asking Respondent to call back. (*Id*. at 2–3.) On July 21, W&H sent Respondent a "72-Hour Letter" by certified mail. (*Id*. at 3, 8–10.) The letter requested the same records, gave Respondent until July 24 to produce them, and warned that failure to respond "may result in additional action, including the issuance of a subpoena." (*Id*. at 3, 8–9.) Respondent failed to respond. Montes again called and left messages on August 7, 25, and September 22 but none were returned.

On December 9, 2025, W&H, through regional administrator Michael Lazzeri, issued a subpoena duces tecum to Respondent under 29 U.S.C. §§ 209 and 211.[1] (Docs. 1-1 at 3; 1-2 at 3–7.) The subpoena required production by December 22 and covered the period from May 1, 2024, to the date of production. It sought documents concerning the ownership and structure of Gambino's Pizza, tax returns, gross annual sales volume, the identities and job duties of workers, exemption classifications, independent contractor arrangements, pay rates, payroll and time records, cash payments, deductions, tips, and pay-related employment policies. (Doc. 1-2 at 5–7.) On December 11, W&H technician Dene'e McElhiney went to the restaurant and handed the subpoena to Respondent, who accepted it. (*Id*. at 8.) Respondent again produced nothing.

DOL attorney Dana Hague then took over the effort to obtain compliance. (Doc. 1-3 at 1.) On March 9, 2026, Hague sent a letter by UPS overnight delivery to three addresses: the restaurant; Respondent's home; and the home of Respondent's father, Jay Smith, whom the DOL believes

---

[1] Section 9 of the FLSA incorporates the subpoena powers of the Federal Trade Commission Act and allows the DOL to subpoena documents relevant to an ongoing investigation. If the recipient refuses to obey, the district court may order production, and "any failure to obey such order . . . may be punished . . . as a contempt." 15 U.S.C. § 49.

may have held an ownership interest in the restaurant. (*Id*. at 5.) The letter noted that no documents had been produced, enclosed another copy of the subpoena with the return of service, asked Respondent to contact her, and warned that failure to cooperate could lead to an enforcement action. UPS confirmed delivery of the letters. (*Id*. at 2, 12–17.) On March 25, Hague called the restaurant and spoke with Respondent's wife, Jennifer Smith, who agreed to pass along a message stressing the importance of a response, but no return call came. On March 30, Hague sent a second letter to the same three addresses and set an April 13 deadline, after which the DOL would file an enforcement action. (*Id*. at 2, 18–24.) Delivery of those letters was confirmed. (*Id*. at 25–30.)

On April 2, Mrs. Smith emailed Hague that "we are gathering as much as we have on the information you are asking for." (*Id*. at 33.) Hague thanked her and asked her to produce whatever was ready by April 13. (*Id*. at 32.) Nothing ever arrived. On April 14, Hague emailed Mrs. Smith that the documents were overdue and noted that "[t]he subpoenaed documents include many things that employers are required by law to maintain, so they should be easy to access." (*Id*. at 31–32.) Mrs. Smith replied within a minute: "Working on sending them now." (*Id*. at 31.) Still, no documents came, and Hague followed up by email on April 15 and 20 without response.

The DOL filed its petition to enforce the subpoena on April 20. (Doc. 1.) On June 3, Magistrate Judge Birzer ordered Respondent to file a written response to the petition by July 24 and to appear on August 25 to show cause why an order enforcing the subpoena should not be entered. (Doc. 3.) That order tolled the statute of limitations on any underlying FLSA claim from December 9, 2025, until Respondent complied with the subpoena. On June 11, 2026, DOL technician McElhiney personally served Respondent with Magistrate Judge Birzer's show-cause order and the petition. (Docs. 4; 4-1.) Respondent filed no response and did not appear at the hearing. (Doc. 6 at 5.) At the hearing, Hague confirmed that the DOL still had not received any

of the subpoenaed documents and described several recent conversations in which Respondent promised to produce them, including a promise to bring them to the hearing. On August 27, Hague reported that the DOL received a thumb drive of documents from Respondent. (*Id.* at 6.) However, after reviewing the production, the DOL advised that it was incomplete, and the DOL continues to seek an order compelling full compliance. On September 21, Magistrate Judge Birzer issued the R&R recommending that the court grant the petition and order Respondent to fully comply with the subpoena. The R&R advised that any objections were due within fourteen days of service and that a party who failed to object forfeits appellate review. (Doc. 6 at 2.) Over a month has passed and Respondent has failed to object.

## II. Standard

On a dispositive matter the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A failure to properly object, however, leaves a party with no entitlement to appellate review, and allows the district court to review the R&R under any standard it deems appropriate. *See Williams v. United States*, No. 19-2476-JAR-JPO, 2019 WL 6167514, at *1 (D. Kan. Nov. 20, 2019) (citing *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996)) ("The Tenth Circuit requires that objections to a magistrate judge's recommended disposition 'be both timely and specific to preserve an issue for de novo review by the district court . . .'").

Subpoena enforcement proceedings are summary in nature, and the court's review is limited. *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1277 (10th Cir. 2002). DOL bears the initial burden. *Perez*, 2015 WL 4744487, at *2. To meet it, DOL must show that "(1) the inquiry is within the agency's authority; (2) the information sought is reasonably relevant to the inquiry; (3) the demand is not too indefinite; and (4) the administrative prerequisites have been satisfied." *Id.* (citing

*Martin v. Gard*, 811 F.Supp. 616, 620 (D. Kan. 1993)); *see SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980). DOL can make this prima facie showing with a declaration from a government official. *FDIC v. Appl*, No. 24-MC-209-HLT-ADM, 2024 WL 5347465, at *2 (D. Kan. Oct. 9, 2024), *report and recommendation adopted*, No. 2:24-MC-00209-HLT-ADM, 2024 WL 5347460 (D. Kan. Nov. 7, 2024); *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024) (prima facie showing "can be fulfilled by a simple affidavit of an agent involved in the investigation"). Once the DOL makes that showing, the court must enforce the subpoena unless the respondent proves that it is overly broad or burdensome, or that enforcement would be an abuse of the court's process. *Appl*, 2024 WL 5347465, at *2. If the respondent does not answer the petition or object, the court only considers if the DOL has met its initial burden. *Id.*

**III. Analysis**

The court has reviewed the R&R and the record and holds that the DOL has met its initial burden. The court briefly addresses each element below.

First, the investigation is within the DOL's authority. The FLSA charges the DOL with administering and enforcing its requirements, including the obligation of covered employers to pay non-exempt employees a minimum wage for all hours worked including overtime. 29 U.S.C. §§ 204, 206, 207, 211(a), 216(c). Section 11(a) authorizes the DOL to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment" and to investigate in order to "determine whether any person has violated any provision of this chapter." *Id.* § 211(a). Section 9 gives DOL the subpoena power to carry out those investigations. *Id.* § 209. The DOL does not have to establish FLSA coverage before issuing a subpoena; Congress authorized the agency to use the subpoena power to gather evidence on that question. *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 214 (1946); *CSG Workforce Partners, LLC v. Watson*, 512 F. App'x 830,

835 (10th Cir. 2013). Here, W&H opened an investigation to determine if Respondent or his employees are covered by the FLSA and, if so, whether Respondent is complying with Respondent is complying with his obligations under FLSA. The DOL issued the subpoena as part of that investigation. (Docs. 1-1 at 1, 3; 1-3 at 3.) The first element is met.

Next, the subpoenaed information is reasonably relevant and not too indefinite. Probable cause is not required for an administrative subpoena, but it must be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544 (1967). Relevance is judged more loosely in an investigation than in litigation, and if the material requested "touches a matter under investigation," relevance is generally established. *Gard*, 811 F. Supp. at 621. Here, the subpoena satisfies this standard. (Doc. 1-2 at 3–7.) It lists specific categories of documents and limits them to the relevant period. All of the categories of information are sufficiently definite to enable Respondent to know what information the DOL seeks. *See Perez*, 2015 WL 4744487, at *3. The requests are also relevant. The subpoena requests records for the business's ownership, structure, and gross sales. (Doc. 1-2 at 5–7.) Those records bear directly on whether Respondent is a covered employer under the FLSA. The subpoena also requests records for workers, pay rates, hours, payroll, deductions, and tips. Those records would be relevant in showing whether Respondent has paid the wages and overtime the FLSA requires. Many of these records are documentation that employers are already required to keep. 29 U.S.C. § 211(c). The ownership records show who controls the business, the sales records go to enterprise coverage, and the worker contact information lets DOL interview employees. Accordingly, each request goes to whether the FLSA covers Respondent and whether he has complied with it. The second and third elements are met.

Finally, the administrative prerequisites are satisfied. The subpoena was signed by the regional administrator of W&H and gave Respondent eleven days after service to comply. (Doc. 1-2 at 3.) Respondent also had ample notice of his obligations. He was personally served with the subpoena, received two follow-up letters that each enclosed another copy, and was later personally served with the petition and the show cause order. (Docs. 1-2 at 1, 8; 1-3 at 1–2; 4-1 at 1.) His wife acknowledged the requests in writing and said the documents were being gathered. (Doc. 1-3 at 3.) The DOL has offered sufficient evidence that Respondent received proper notice of his obligation to respond to the subpoena. The fourth element is met.[2]

## IV. Conclusion

For the foregoing reasons, the court ADOPTS the R&R (Doc. 6) and GRANTS the Department of Labor's petition to enforce the administrative subpoena (Doc. 1).

Respondent Jared A. Smith d/b/a Gambino's Pizza is ORDERED to produce all documents requested in the administrative subpoena served on him on December 11, 2025, within **fourteen (14) days** of the date of this order. Respondent shall produce the documents to assistant district director Martha Pint, Wage and Hour Division, at pint.martha@dol.gov, or c/o the Kansas City District Office, 2300 Main Street, Suite 10058, Kansas City, MO 64108. Respondent must produce every document the administrative subpoena requires. Respondent is advised that failure to comply with this order may be punished as contempt of court. 15 U.S.C. § 49.

The tolling of the statute of limitations on any underlying FLSA claims remains in effect until Respondent fully complies with the administrative subpoena. (Doc. 3.)

[2] The thumb drive Respondent delivered after the show cause hearing does not change the result. The DOL reviewed the production and reported that it was incomplete and inadequate. (Doc. 6 at 6.) A partial production does not satisfy the subpoena, and the DOL remains entitled to an order requiring full compliance.

The clerk is directed to mail a copy of this order to Respondent Jared A. Smith d/b/a Gambino's Pizza at 114 E. Main Street, Marion, KS 66861.

IT IS SO ORDERED. Dated this 22nd day of October, 2026.

_s/ John W. Broomes___________________
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE